MICROSOFT CORPORATION,
Plaintiffs,

v.

PHOENIX SOLUTIONS,
INC., Defendants.

Case No. 2:10–cv–03846–MRP–SSx.

United States District Court,
C.D. California.

Aug. 18, 2010.

Grant E. Kinsel, Michael J. Song, Perkins Coie LLP, Los Angeles, CA, Stacy Quan, Microsoft Corporation, Redmond, WA, for Plaintiffs.

R. Joseph Trojan, Trojan Law Offices, Beverly Hills, CA, for Defendants.

## ORDER REGARDING MOTION TO DISMISS

MARIANA R. PFAELZER, District Judge.

## I. INTRODUCTION

In this Order, the Court resolves the pending motion to dismiss. The Court also sets forth detailed requirements for the parties' exchange of infringement and invalidity contentions.

## II. THE MOTION TO DISMISS

### A. BACKGROUND

Microsoft Corporation ("Microsoft") filed the original complaint ("Complaint") in this action on May 21, 2010 against Phoenix Solutions, Inc. ("Phoenix") requesting declaratory judgment of non-infringement and invalidity of U.S. Patent Nos. 6,633,-846 ("the '846 patent"), 6,615,172 ("the '172 patent"), 6,665,640 ("the '640 patent"), 7,050,977 ("the '977 patent"), 7,139,714 ("the '714 patent"), 7,203,646 ("the '646 patent"), 7,225,125 ("the '125 patent"), 7,277,854 ("the '854 patent"), 7,376,556 ("the '556 patent"), 7,392,185 ("the '185 patent"), 7,555,431 ("the '431 patent"), 7,624,007 ("the '007 patent"), 7,647,225 ("the '225 patent"), 7,657,424 ("the '424 patent"), and 7,672,841 ("the '841 patent") (collectively, the "patents-in-suit"). Complaint ¶¶ 5–19, 28–42 (Docket No. 1). The patents-in-suit relate to systems for speech recognition. Complaint ¶ 21. Microsoft provides interactive voice response ("IVR") services to various businesses including American Express. Complaint ¶ 22. "[O]n March 18, 2010, counsel for Phoenix wrote to counsel for American Express stating, 'after reviewing the operation of your telephonic customer support line (800.528.4800), we have concluded that the American Express system is covered by Phoenix's patents.'" Complaint ¶ 23. In this letter, Phoenix's counsel "identified all fifteen of the patents-in-suit, claimed that the IVR services provided by Microsoft for American Express use all fifteen of the patents-in-suit, and stated that American Express 'is now at the top of our list.'" Complaint ¶ 23. Microsoft explains that it believes Phoenix will commence suit against its customer American Express and because Microsoft provides the IVR services to American Express that Phoenix claims infringe the patents-in-suit, there is a controversy between Microsoft and Phoenix. Complaint ¶ 24.

Phoenix filed a motion to dismiss all of Microsoft's claims based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Docket No. 10.

### B. LEGAL STANDARD

### 1. Dismissal for Lack of Subject–Matter Jurisdiction

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move for dismissal based on the Court's lack of subject-matter jurisdiction. Fed. R.Civ.P. 12(b)(1). A court lacks subject matter jurisdiction over a case if the plaintiff lacks standing to bring the cause of action. Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to

dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004).

### 2. Dismissal for Failure to State a Claim upon which Relief Can Be Granted

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "A motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed.Cir. 2007). Therefore, the law of the regional circuit applies. *Id.*

Federal Rule of Civil Procedure 8(a)(2) governs pleading requirements and states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," which the Supreme Court interprets to require a showing of facial plausibility. Fed. R.Civ.P. 8(a)(2); *see Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). By contrast, Form 18, which is appended to the Federal Rules of Civil Procedure and is entitled "Complaint for Patent Infringement," provides an example for alleging patent infringement that requires little more than a conclusory statement that the defendant infringed the plaintiff's patent. The Ninth Circuit has not addressed whether the Supreme Court's new plausibility standard applies to claims under patent law. However, several other courts have weighed in on this issue.

The Federal Circuit in *McZeal*, applying Fifth Circuit law, held that under *Twom-* bly,[1] a plaintiff asserting a direct patent infringement claim "need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal*, 501 F.3d at 1357. The Federal Circuit relied on what was then Form 16, now Form 18, which sets forth conclusory allegations of direct patent infringement as sufficient to meet the pleading requirements. *See id.* at 1356–57. Writing separately in *McZeal*, Judge Dyk explained that although the requirements of *Twombly* plainly apply outside the antitrust context and applied to McZeal, because Federal Rule of Civil Procedure 84 requires a court to accept as sufficient any pleading made in conformance to the Forms, a court must find a bare allegation of direct infringement in accordance with Form 16, now Form 18, sufficient under Rule 8(a)(2) to state a claim. *Id.* at 1360–62; *see Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09–01531 RS, 2009 WL 2972374, at *2 (N.D.Cal. Sep. 14, 2009) (attempting to reconcile Form 18 with the guidance of the Supreme Court in *Twombly* and *Iqbal*).

Some district courts have concluded similarly that while the Court otherwise must apply the plausibility standard of *Twombly* and *Iqbal* to patent claims and counterclaims, for allegations of direct infringement, pleading in conformance with Form 18 is sufficient. *See, e.g., Elan Microelectronics, supra*, 2009 WL 2972374 (holding claims of indirect infringement must meet the plausibility standard); *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09–CV–446, 2010 WL 2026627 (E.D.Tex. May 6, 2010). Other district courts have concluded *Iqbal* controls all claims in patent litigation and require plaintiffs alleging direct infringement, to "include, at a minimum, a brief description of what the patent at issue does, and an allegation that certain named

---

1. After the *McZeal* decision, the Supreme Court issued its opinion in *Iqbal*, which further emphasized that a claim must be plausible on its face. 129 S.Ct. at 1949–50.

and specifically identified products or product components also do what the patent does, thereby raising a plausible claim that the named products are infringing." *Bender v. LG Elecs. U.S.A., Inc.*, No. C 09–02114 JF (PVT), 2010 WL 889541, at *6 (N.D.Cal. Mar. 11, 2010). *See, e.g., Anticancer Inc. v. Xenogen Corp.*, 248 F.R.D. 278, 282 (S.D.Cal.2007) (holding *Twombly's* plausibility standard applies to pleadings in patent infringement actions, including claims, counterclaims, cross-claims, third party claims and separate affirmative defenses); *Li Ming Tseng v. Marukai Corp. U.S.A.*, No. SACV 09–0968 AG (RNBx), 2009 WL 3841933, at *1 (C.D.Cal. Nov. 13, 2009) (applying plausibility standard to direct infringement allegations and dismissing patent infringement claim for failing to state a claim).

▓▓▓ This Court agrees with the Federal Circuit and those district courts that have held that a party alleging direct infringement need only comply with Form 18. A patentee "need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal*, 501 F.3d at 1357. This Court additionally reasons that minimal pleading of direct infringement is sufficient because this Court requires the prompt filing of infringement contentions, which put the party accused of infringement on detailed notice of the basis for the allegations against it. Correspondingly, the Court finds that a declaratory judgment claim of no direct infringement need only plead facts to put the patentee on notice and need not be subject to the heightened pleading standards of *Twombly* and *Iqbal.*

▓▓▓ With respect to invalidity counterclaims, the Court agrees with other district courts that it would be incongruous to require heightened pleading when the pleading standard for infringement does not require facts such as "why the accused products allegedly infringe" or "to specifi-

cally list the accused products." *Teirstein v. AGA Medical Corp.*, No. 6:08–cv–14, 2009 WL 704138, *5 (E.D.Tex. Mar. 16, 2009). In addition, because the Court requires that invalidity contentions be served promptly after a counterclaim of invalidity is advanced, invalidity claims are not subject to the heightened pleading standards of *Twombly* and *Iqbal.* *See generally Pfizer Inc. v. Apotex Inc.*, 726 F.Supp.2d 921, 938 (N.D.Ill.2010) ("In analogous cases, other district courts have concluded that local patent rules requiring similar disclosures militate against dismissal of counterclaims for failure to meet the pleading requirements of Rule 8(a)."); *see* Section III, *infra*, setting forth requirements. Correspondingly, the Court does not subject declaratory judgment claims of invalidity to the heightened pleading standards of *Twombly* and *Iqbal.* *See, e.g., Teirstein*, 2009 WL 704138 at *6. All other claims, counterclaims and affirmative defenses in a patent case are subject to the requirements of Federal Rule of Civil Procedure 8(a) as interpreted by the Supreme Court in *Twombly* and *Iqbal*, except for inequitable conduct.

### C. Discussion
### 1. Lack of Subject–Matter Jurisdiction

Phoenix seeks a Rule 12(b)(1) dismissal for lack of subject-matter jurisdiction. Phoenix argues that the Court lacks the authority to hear the dispute because there is no actual controversy between Microsoft and Phoenix. Because Microsoft is the party invoking the Court's jurisdiction, Microsoft has the burden to show that an actual controversy exists between the parties. *See Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. The Declaratory Judgment Act provides that "in a case of actual controversy" a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

28 U.S.C. § 2201(a). The question the Court must resolve is whether an actual controversy exists even though Phoenix has not directly threatened Microsoft. Phoenix argues that because it has accused only American Express of infringement, and has not sent any cease and desist letter to Microsoft, there can be no actual controversy between Phoenix and Microsoft. Furthermore, Phoenix states that it sued only American Express because only American Express can infringe an IVR system as a whole.

Microsoft, in order to meet its burden of showing an actual controversy exists, provided additional evidence in support of its declaratory judgment claims. In 2007, Microsoft acquired Tellme Networks, Inc. ("Tellme") and began operating the entity as a subsidiary. Clark Decl. ¶ 3. Tellme has provided IVR services to American Express since 2003. Clark Decl. ¶ 4. Phoenix first approached American Express regarding alleged infringement of its patents in a July 2006 letter. Clark Decl. Ex. A at 5. Attached to its July 2006 demand letter, Phoenix included representative claim charts showing how systems operated by SpeechWorks (a different IVR system) infringed certain Phoenix patents. Clark Decl. Ex. A at 9–19. Phoenix followed-up with another letter in September 2006 alleging that American Express's IVR system infringed certain Phoenix patents and suggesting that the parties negotiate a "reasonable licensing arrangement." Clark Decl. Ex. A at 3. On October 24, 2006, American Express sent a letter titled "Notice of Entitlement to Indemnification" to Tellme demanding indemnification in connection with Phoenix's allegations of patent infringement. Clark Decl. ¶ 4.

Phoenix sent American Express another demand letter in January 2007 focusing its allegations directly on the Tellme IVR system and attaching an article about the Tellme system. Clark Decl. Ex. B at 2 ("The TellMe system clearly supports language processing. . . .") In October 2007, Phoenix sent yet another demand letter to American Express. *See* Clark Decl. Ex. C. In February 2009, Phoenix sent its most threatening letter to date, explaining it "had initiated a new action against PG & E in California based on their refusal to take a license. Our expectation is that new lawsuits will be filed in due course against other uncooperative holdouts as well." Clark Decl. Ex. D at 1. During this entire time, American Express did not take a license under Phoenix's patents and Phoenix did not file suit.

On March 18, 2010, Phoenix sent another letter to American Express identifying the seven patents from the letters of 2006 and 2007, as well as eight additional patents. *See* Clark Decl. Ex. E. Phoenix requested a meeting with American Express because "it is now time for us to reach a resolution concerning AmEx's use of fifteen of Phoenix's patents." Clark Decl. Ex. E at 2. In April 2010, Phoenix submitted claim charts for nine of the fifteen patents-in-suit. *See* Microsoft Opp. to M. to Dismiss at 6. In the claim chart for the '846 patent, for example, Phoenix alleges "the American Express Company ("Amex") interactive voice response ("IVR") system, including the one reachable at 800–528–4800, is a combination of third party hardware and software provided by TellMe Networks ("Tellme") that recognizes speech based queries from Amex customers using an electronic agent." Kinsel Decl. Ex. 1

The Court reviews whether a threatening communication from the patentee to a party's customer can support an actual controversy between that party and the patentee. In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court rejected the requirement that there be a reasonable

apprehension of suit between the declaratory judgment plaintiff and the patentee in order to find an actual controversy. 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). Instead, the Supreme Court held that jurisdictional analysis was properly based on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127, 127 S.Ct. 764 (internal citations omitted). After *MedImmune,* the Federal Circuit has explained that an actual controversy exists "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." *San-Disk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1381 (Fed.Cir.2007). Microsoft has contended that it has the right to provide the allegedly infringing IVR system to American Express without a license from Phoenix because it does not infringe Phoenix's patents.

■ Under pre-*MedImmune* case law, the Federal Circuit found that there was an actual controversy between the patentee and service provider when a patentee threatened a customer. In *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* the Federal Circuit found that an actual controversy could be found "in the absence of *any* communication from defendant to plaintiff." 846 F.2d 731, 736 (Fed.Cir. 1988). In a later case, the Federal Circuit explained that in *Arrowhead,* Arrowhead "provided its customers with all the steps of a water treatment process that the patentee alleged was covered by its patent. Arrowhead was potentially an inducer of infringement and it indemnified its customer against liability as well. Thus, there existed a legal cause of action between the declaratory plaintiff and the patentee establishing an 'actual controversy' in that the patentee in *Arrowhead* could have brought a patent infringement suit against the declaratory judgment plaintiff." *Microchip Tech. Inc. v. The Chamberlain Group, Inc.,* 441 F.3d 936, 943 (Fed.Cir.2006). The key to the Federal Circuit's finding in both *Arrowhead* and *Microchip* is that the service provider would be exposed to a claim for direct infringement and inducement from the patentee. This shows that there is an underlying legal cause of action between the patentee and the service provider because there is a legal claim that the patentee could have brought against the service provider in the absence of the declaratory judgment action. *See id.* The claim charts provided by Phoenix indicate that the software and hardware of American Express's IVR system are provided by Microsoft's Tellme subsidiary. The IVR system described in the patents-in-suit could be infringed by the Tellme system provided by Microsoft to American Express. In fact, Phoenix specifically alleges that the Tellme IVR system provided by Microsoft to American Express infringes the patents-in-suit. Under *Arrowhead* and *Microchip,* there is an actual controversy between Microsoft and Phoenix because Microsoft is exposed to a claim for both direct infringement and inducement by providing the IVR services to American Express.

The Federal Circuit left open the question of whether an indemnification obligation between the service provider and customer could provide the actual controversy when there is an actual controversy between the patentee and the customer. *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 981 (Fed.Cir.1993) (stating that if the patentee makes no threats to the indemnitor's licensees, the indemnitor cannot bring a declaratory judgment action against the patentee). In a post-

*MedImmune* decision, a district court found that where a competitor patentee applied "pressure tactics" to WS Packaging Group, Inc.'s ("WS") customers and WS was required to indemnify those customers, there was an actual controversy to support a declaratory judgment suit by WS against its competitor. *See WS Packaging Group, Inc. v. Global Commerce Group, LLC,* 505 F.Supp.2d 561, 566–67 (E.D.Wis.2007). According to *WS Packaging,* applying pressure tactics against a competitor's customers rather than the competitor itself should not change the analysis for actual controversy under *MedImmune. Id.* at 566. Because Microsoft is bound to indemnify American Express for infringement under the Tellme system, there is an actual controversy between Microsoft and Phoenix under the theory that an indemnification obligation between the service provider and customer creates an actual controversy between the service provider and the patentee. The Court need not find that the indemnification obligation alone creates an actual controversy because it is clear that exposure to a claim for direct infringement and inducement creates an actual controversy. The Court notes, however, that the indemnification obligation gives further weight to the finding of an actual controversy. *See Microchip,* 441 F.3d at 943.

■ In the case that the Court finds Microsoft has an actual controversy with Phoenix, Phoenix argues that the claims should be limited to nine claims of nine patents for which Phoenix has provided claim charts to American Express. While Phoenix may have provided claim charts on only nine of the patents, Phoenix fails to explain why this dissipates the controversy with respect to the other six patents Phoenix accused American Express of infringing on March 18, 2010. The test for declaratory judgment jurisdiction in patent cases is whether the objective words and actions of the patentee support a reason-

able inference that the patentee has intent to enforce a patent. *See Hewlett–Packard Co. v. Acceleron LLC,* 587 F.3d 1358, 1363 (Fed.Cir.2009). The March 18, 2010 letter names all fifteen patents, describes how Phoenix has successfully litigated the patents against defenses of non-infringement and invalidity, states it would be in the best interests of all parties to avoid litigation, and requests American Express's call volume in order to make a licensing offer. The March 18, 2010 letter is evidence of conduct that shows an intent to enforce all fifteen patents and creates declaratory judgment jurisdiction over all fifteen patents. *Id.* The Court will not limit Microsoft's declaratory judgment claims to only nine of the patents-in-suit. There is an actual controversy with respect to all fifteen of the patents-in-suit.

The Court **DENIES** Phoenix's motion to dismiss Microsoft's declaratory judgment claims for the Court's lack of subject-matter jurisdiction.

### 2. Failure to State a Claim upon which Relief Can Be Granted

Phoenix argues that Microsoft does not plead facts sufficient to meet the requirements of Federal Rule of Civil Procedure 8(a)(2) for its claims of no direct infringement and invalidity, and therefore Microsoft's claims should be dismissed for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Rule 8(a)(2) requires the pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court in *Twombly* and *Iqbal* interpreted Rule 8(a)(2) to require that claims meet the plausibility standard. *See Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). This Court does not require claims of direct infringement to meet the pleading standards of Rule 8(a)(2) as inter-

preted by *Twombly* and *Iqbal* because Form 18 provides a form "Complaint for Patent Infringement" for direct infringement claims and Rule 84 requires a court to accept as sufficient any pleading made in conformance to the Forms. *McZeal,* 501 F.3d at 1360–62; *see Elan,* 2009 WL 2972374 at \*2.

■ Phoenix argues that Microsoft's claims are vague and indefinite because they did not identify specifically which claims are not infringed or invalid. The Court evaluates whether Microsoft's allegations have at least as much detail as Form 18 in deciding whether Rule 84 will require the Court to accept the pleadings as sufficient. The example of infringement allegations in Form 18 is as follows: "The defendant has infringed and is still infringing the Letters Patent by making, selling, and using *electric motors* that embody the patented invention, and the defendant will continue to do so unless enjoined by this court." In its Complaint, Microsoft explains that Phoenix alleges that the IVR services used by American Express infringe each of the patents-in-suit. Complaint ¶¶ 23–24. Phoenix pursues a licensing arrangement with American Express covering each of the patents-in-suit. Complaint, Ex. 1. Microsoft's explanation that there is a controversy over whether American Express would infringe the patents-in-suit by using the IVR services provided by Microsoft is substantially similar to the allegations described in Form 18 because it identifies the allegedly infringing product, the allegedly infringing activity, and the allegedly infringed patents. Furthermore, we can expect no more detail from Microsoft on the exact claims that are infringed at this time because this is a declaratory judgment suit. The Court therefore finds that Plaintiffs' pleading of no direct infringement conforms with Form 18 such that this Court must accept the pleading as sufficient due to Rule 84.

With respect to invalidity, the Court finds that Microsoft has given Phoenix enough information to put it on notice of its claim and meet the Rule 8(a) standard. Granting Phoenix's motion to dismiss would be inconsistent with the infringement and invalidity contention disclosures the Court requires of the parties. *See Pfizer,* 726 F.Supp.2d at 938; *Elan Pharma Int'l Ltd. v. Lupin Ltd.,* No. 09–1008, 2010 WL 1372316, at \*4–5, 2010 U.S. Dist. LEXIS 32306, at \*13–14 (D.N.J. Mar. 31, 2010). The Court **DENIES** Phoenix's motion to dismiss Microsoft's declaratory judgment claims for no direct infringement and invalidity for failure to state a claim upon which relief can be granted.

## III.  INFRINGEMENT AND INVALIDITY CONTENTIONS

After the Defendants submit their Answer in this case, the Court will schedule an Initial Case Management Conference pursuant to Federal Rule of Civil Procedure 16(b). The Court **ORDERS** the parties to comply with the following requirements:

1.  When the parties confer pursuant to Rule 26, the parties shall additionally discuss and address in the Case Management Statement filed pursuant to Rule 26 and the Local Rules of this Court:

(A) the scope and timing of any claim construction discovery including disclosure of and discovery from any expert witness permitted by the Court;

(B) the format of the Claim Construction Hearing, including whether the Court will hear live testimony, the order of presentation, and the estimated length of the hearing;

(C) how the parties intend to educate the Court on the technology at issue; and

(D) how the parties intend to manage Summary Judgment motions following the Claim Construction Hearing.

2. Not later than 14 days after the Initial Case Management Conference, the party claiming patent infringement, shall serve on all parties a "Disclosure of Asserted Claims and Infringement Contentions." Separately for each opposing party, the "Disclosure of Asserted Claims and Infringement Contentions" shall contain the following information:

(A) each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted;

(B) separately for each asserted claim, specific apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware;

(C) a chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including the corresponding function under 35 U.S.C. § 1126 where applicable;

(D) for each claim which is alleged to have been indirectly infringed, an identification of the direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement;

(E) whether the claim is alleged to be literally present or present under the doctrine of equivalents in each Accused Instrumentality;

(F) the priority date to which each asserted claim allegedly is entitled if the patent claims priority to an earlier application; and

(G) if a party claiming patent infringement alleges willful infringement, the basis for such allegation.

3. With the "Disclosure of Asserted Claims and Infringement Contentions," the party claiming patent infringement, shall produce to each opposing party or make available for inspection and copying:

(A) a copy of the file history for each patent in suit;

(B) all documents evidencing ownership of the patent rights by the party asserting patent infringement; and

(C) the status of any post-issuance proceedings involving each patent in suit, including reexaminations, interferences, appeals from the Board of Patent Appeals and Interferences to the Court of Appeals for the Federal Circuit, and district court litigations including prior claim constructions.

4. Not later than 45 days after service upon it of the "Disclosure of Asserted Claims and Infringement Contentions," each party asserting a claim of patent invalidity shall serve on all parties its "Invalidity Contentions" which shall contain the following information:

(A) which section of 35 U.S.C. § 102 and/or 103 that allegedly renders each claim of each patent that is allegedly invalid;

(B) the reason why each claim is allegedly invalid, including identification of any prior use, prior sale, each item of prior art that allegedly anticipates each asserted claim or renders it obvious, abandonment of the invention, or other reason why the claim is invalid;

(C) if obviousness is alleged, an explanation of why the prior art renders each claim alleged to be invalid obvious, including an identification of any combinations of prior art showing obviousness;

(D) a chart identifying where specifically in each item of prior art each limitation of each claim alleged to be invalid is found;

(E) any grounds of invalidity based on 35 U.S.C. § 101 for each claim alleged to be invalid; and

(F) any grounds of invalidity based on 35 U.S.C. § 112 for each claim alleged to be invalid.

5. With the "Invalidity Contentions," the party or parties claiming invalidity shall produce or make available for inspection and copying:

(A) a copy or sample of the prior art identified in the "Invalidity Contentions" which does not appear in the file history of the patent at issue; and

(B) documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in the "Disclosure of Asserted Claims and Infringement Contentions."

6. In all cases in which a party files a complaint or other pleading seeking a declaratory judgment that a patent is invalid, Sections III.2, III.3, and III.5(B) shall not apply unless and until a claim for patent infringement is made by a party. If the defendant does not assert a claim for patent infringement in its answer to the complaint, no later than 14 days after the defendant services its answer, or 14 days after the Initial Case Management Conference, whichever is later, the party seeking a declaratory judgment of invalidity shall serve upon each opposing party its Invalidity Contentions that conform to Section III.4 and produce or make available for inspection and copying the documents described in Section III.5(A).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Phoenix's motion to dismiss Microsoft's declaratory judgment claims for the Court's lack of subject-matter jurisdiction. The Court **DENIES** Phoenix's motion to dismiss Microsoft's declaratory judgment claims for no direct infringement and invalidity for failure to state a claim upon which relief can be granted. The hearing scheduled for the motion to dismiss is **VACATED**. The parties are further **ORDERED** to serve infringement and invalidity contentions in compliance with the Court's directions in this Order.

**IT IS SO ORDERED.**